DINA L. SANTOS, SBN 204200
A PROFESSIONAL LAW CORP.
455 CAPITOL MALL SUITE 802
SACRAMENTO, CA 95814
916 447-0160
defense@dinasantos.com

Attorney for Defendant
JULIAN RAYMON ORTIZ

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: 24CR0302 JAM |
| Plaintiff, | **DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS INDICTMENT FOR VIOLATION OF SIXTH AMENDMENT RIGHT TO COUNSEL** |
| vs. | |
| JULIAN RAYMON ORTIZ, | |
| Defendant. | Judge: Hon. John A. Mendez<br>Date: November 4, 2025<br>Time: 9:00 a.m. |

## INTRODUCTION

The Government's opposition is dismissive towards the constitutional crisis faced by Mr. Ortiz and similarly situated clients that are represented by appointed counsel pursuant to the Criminal Justice Act (CJA). Congress's failure to fund defender services has left appointed counsel and the providers necessary to perform the required duties essential to properly defending a client without compensation for over four months with no end in sight. The Governments insulting suggestion that Counsel is obligated to graciously work pro bono for an endless amount of time is shocking and inaccurate. Mr. Ortiz's case is set for jury trial on January 26, 2026. Substantial investigation and work is outstanding that needs to be performed by service providers that are not being

compensated.  The trial preparation that is required for a federal trial cannot simply wait for the federal government to pay outstanding debts, to filter through the submitted vouchers, and to approve a new budget.

## ARGUMENT

## I.    THE GOVERNMENT MISCHARACTERIZES THE SEVERITY OF THE FUNDING CRISIS

Counsel in this particular case has not received compensation since June and that was for work performed prior to that date. The investigator and paralegal both have outstanding bills that have not been paid and there is no end in sight for when payment will arrive.  This is not a matter of a minor delay in payment as the Government suggests.

## II.    THE UNPRECEDENTED NATURE OF THIS VIOLATION DEMANDS JUDICIAL ACTION

The government argues that because no federal court has dismissed an indictment for non-payment of appointed counsel, and that this Court should not be the first. This logic is perverse. The absence of precedent exists because Congress has never before so thoroughly failed in its obligation to fund constitutionally-required defense counsel.  Courts exist precisely to address constitutional violations when they arise, not to wait for other courts to act first. As Justice Marshall noted in *Furman v. Georgia*, 408 U.S. 238, 269 (1972), The Eighth Amendment, like the other great clauses of the Constitution, "must draw its meaning from evolving standards of decency…" Similarly, the Sixth Amendment's guarantee must respond to unprecedented governmental failures. When Congress creates an unprecedented crisis, courts must fashion unprecedented

remedies.

Courts possess inherent supervisory authority to remedy serious structural defects in the criminal process. *See, e.g., United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (recognizing structural error doctrine), and judicial power to dismiss indictments in extreme cases under their supervisory authority. Here, the government's failure to ensure reliable funding for appointed counsel undermines those guarantees. CJA counsel must be able to function without crippling uncertainty; otherwise, the guarantee of effective assistance becomes hollow.

**A. The Funding Failure Amounts to a Structural Defect That Requires Dismissal.**

This is not a case of incidental delay or administrative inconvenience. The failure is systemic, affecting all panel counsel and causing deferred payments, payment uncertainty, and resource constraints. Such a pervasive defect is a structural defect. The defect here arises from the government's forfeiture of its duty to maintain the institutional framework required for adversarial testing. Without reliable compensation, defense counsel cannot fully engage over the life of the case. To permit the prosecution to continue would allow the government to proceed with a structural advantage over indigent defendants, in direct tension with the Sixth Amendment.

**B. Alternative Remedies Are Inadequate.**

The defendant does not merely seek increased funding (which is beyond this Court's power), but demands that the prosecutorial machinery cannot operate under a funding

-3-

regime that systematically degrades the right to counsel.  A more limited remedy (e.g. staying proceedings, ordering special funding) would not fully redress the structural harm or guarantee counsel's effective function. This Court should not permit governmental prosecutions to proceed in a regime where defense counsel are forced to litigate effectively without reliable compensation or support, in circumstances that impair their ability to provide constitutionally adequate representation—or deter counsel from zealous advocacy altogether. Dismissal of the Indictment is the only adequate remedy for this structural deficiency. Dismissal is the only remedy that fully preserves the integrity of the adversarial process under these extreme conditions.

## III. THE GOVERNMENT'S "PRESUMPTION" ARGUMENT IGNORES REALITY

The government relies heavily on cases presuming that attorneys "will subordinate [their]pecuniary interests" to their professional obligations. *Walter-Eze*, 869 F.3d at 902. These cases, however, involve situations where attorneys faced temporary payment disputes with individual clients, not systematic governmental failure to fund an entire constitutional mandate. The presumption that counsel will work indefinitely without compensation cannot survive when the deprivation is systematic rather than individual; governmental rather than private; indefinite rather than temporary, or complete rather than partial.  The Government first created this untenable situation by essentially forcing CJA attorneys to accept delayed compensation when they ran out of money and then compounded the problem with the shutdown and have additionally informed the group that the backlog of vouchers will create yet another delay once the shutdown ends.

IV.    THE SEPARATION OF POWERS DOES NOT INSULATE
CONSTITUTIONAL VIOLATIONS

The government's response to the current unprecedented chronic and continuing violation of the Sixth Amendment right to counsel is stunning in its audacity.  It suggests that, since previous courts have not held the government accountable for such a blatant constitutional violation, this Court should follow their example.   It does so after acknowledging that government interference with the general right to counsel may warrant remedies tailored to address the magnitude of the violation.  *United States v. Morrison,* 449 U.S. 361, 364-65 (1981).  The right to counsel is "a bedrock principle" of our law and the "foundation for our adversarial system."  *Martinez v. Ryan,* 566 U.S. 1, 12 (2012).  Non-payment of counsel and necessary service providers threatens the very heart of that bedrock principle.

A district court has inherent supervisory powers which may be invoked to remedy constitutional or statutory violations, protect judicial integrity, or to deter future illegal conduct.  *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008).  The current budget crisis constitutes a violation of the Sixth Amendment right to counsel as well as a statutory violation of the obligations to pay appointed counsel and necessary The absence of funds to explore potential defenses and/or sentencing mitigation impedes Mr. Ortiz's right to competent representation.

**V.  THE OPINION ISSUED IN *UNITED STATES V. VASQUEZ*, EDCA CASE NO. 2:25-CR-0135 WBS IS INAPPLICABLE BASED ON OUTDATED CASE LAW AND REASONING.**

The government has relied on Judge Shubb's ruling in *United States v. Vasquez* [2:25-135 WBS].  The opinion in *United States v. Vasquez* was issued on October 20, 2025.  The decision in Vasquez fails to mention that the CJA statute is how Congress authorized the federal courts to pay for representation required under the *Gideon* decision. It may be a statutory scheme, but it is one that protects a constitutional right – the Sixth

Amendment's right to counsel.  Second, the premise that indigent defense attorneys can be forced to work without compensation is erroneous. There is no requirement that counsel donate to the court the significant amount of time required to represent a defendant in a criminal case.  While some states may have a *pro bono* requirement, there is nothing in the law which requires the unconscionable and outrageous position that CJA counsel donate all their time and services to represent indigent defendants.  Imposing such a requirement, as *Vasquez* suggests, is inconsistent with the case authority approving of *de minimis* obligations to donate attorney time which *Vasquez* relies on in reaching its result.  The simple scope of the need for experienced criminal defense attorneys to represent indigent individuals would swallow up entire professional careers.

In support of its premise that indigent defense lawyers can be compelled to work without pay, Judge Shubb provided a thorough analysis of aging precedents and correctly identified the historical legal tradition regarding *pro bono* service. This analysis is misplaced as it fails to consider the constitutional issue and the unprecedented nature of the current crisis. It also fundamentally mischaracterizes the modern statutory and constitutional framework established by the Criminal Justice Act (CJA) and the current crisis.

The *Vasquez* analysis rests on precedents from a bygone era when the legal profession operated under entirely different economic and social conditions—conditions that no longer exist and cannot be resurrected by judicial fiat. The *Vasquez* opinion fails to draw the necessary distinction between an attorney's historic duty to serve and the government's systematic, indefinite, and self-created failure to fund the statutory

mechanism (the CJA) upon which the constitutional guarantee of effective counsel relies. Moreover, the CJA obligates the government to pay counsel for their services and, thus, created an expectation on behalf of CJA counsel that they would receive compensation for their work. CJA counsel organizes their practice to reflect this reality. This is especially true of CJA counsel who are experienced and focus much, if not all, of their practice according to this expectation. Undersigned counsel has been without significant CJA compensation since June 2025—over four months. This is not an occasional imposition; it is economic conscription. And it is not simply counsel who suffers—it is Defendant Ortiz, whose Sixth Amendment rights are being systematically violated while the government prosecuted for months with fully-funded counsel.  Third, *Vasquez* mixes together the attorney's financial interest with the client's constitutional right.  The opinion focuses on counsel's compensation rather than recognizing that this case is about the *defendant's* right to effective counsel, which cannot exist when counsel is forced to choose between economic survival and professional duty, which is what happens when there is a *structural defect of this magnitude*.

The instant motion is directed at the client's constitutional right.  So long as counsel is not being funded on a nationwide basis, the government is actively impeding the ability of counsel to properly represent clients.  This is not an individual problem.  This is a system-wide failure.  It therefore represents the kind of chronic constitutional violation which can only be deterred by the extreme remedy of dismissal.  *United States v. Chapman, supra,* 524 F.3d at 1085.

**VI.  ADDITIONAL RELIEF**

    Should the Court deny the motion to dismiss, the Court should remedy this Sixth

Amendment violation by taking the following action:

1.  Stay of all proceedings, and vacate the currently set jury trial until counsel's compensation for all CJA cases is current and those of the providers.

2.  Release Mr. Ortiz on terms of bail.

3.  Withdrawal of Counsel – Alternatively, if these motions are denied, defense Counsel respectfully moves to withdraw.  Defense counsel cannot economically remain in unpaid status and cannot continue on ethically. Representing a defendant in federal court, prepare for a jury trial and represent the client in a federal jury trial that is facing a mandatory minimum sentence of 10 years in prison up to life, while competing against the United States Department of Justice and their immense and infinite / limitless resources, violates counsel's duty under the California State Bar Rules of Professional Responsibility.

The relevant California State Bar authorities here are primarily contained in Rules 3-110 and 1.16 as well as Business and Professions Code 6068(o)(7).

First of all, every lawyer in every case must educate themselves on the various elements of the facts of a case, as the lawyer was not there when the crime was committed. The lawyer will need measurements and photographs of crime scenes, reenactment of crime scenes, interviews of witnesses, explanation and education of cell phone evidence, handwriting experts, DNA and fingerprint experts, mental health experts. This is simply a quick list. No district judge or federal prosecutor can dispute that a defense attorney's

failure to hire and utilize an expert in many cases is clear ineffective assistance of counsel and violative of the 6th Amendment. Yet here, that is exactly what is occurring. Expecting a panel attorney, unpaid for half a year, without access to experts or investigators, to fight zealously against the U.S Attorneys and the Department of Justice (with their $40 billion dollar budget), certainly "challenges" an attorney to act "competently" as ethically required.

In light of that immutable fact, these authorities come into play:

Rule 3-110 Failing to Act Competently

(A) A member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence.

(B) For purposes of this rule, "competence" in any legal service shall mean to apply the 1) diligence, 2) learning and skill, and 3) mental, emotional, and physical ability reasonably necessary for the performance of such service.

(C) If a member does not have sufficient learning and skill when the legal service is undertaken, the member may nonetheless perform such services competently by … 2) by acquiring sufficient learning and skill before performance is required.

Thus, a CJA Panel attorney, as argued herein, who goes forward with representation should a conviction occur following this highly rigged game, that conviction is undoubtedly subject to reversal upon constitutional grounds for lawyer incompetence.

6068(o)(7) Business and Professions Code

Once the lack of competency occurs, the CJA Panel attorney is thereafter subject to the mandatory 6068(o)(7) requirement that, within 30 days, an attorney shall notify the State Bar in writing, on a Bar approved form, of any reversal of judgment in a proceeding based in whole or in part upon misconduct, grossly incompetent representation, or willful misrepresentation by an attorney.

An attorney facing such an obvious conclusion to the incompetent representation, must move to withdraw immediately.

Rule 1.16 Declining or Terminating Representation

(a). …where representation has commenced, shall withdraw from the representation of a client if:

(2) the lawyer knows* or reasonably should know* that the representation will result in violation of these rules or of the State Bar Act;

(b) …Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

(8) the lawyer's mental or physical condition renders it difficult for the lawyer to carry out the representation effectively;

(9) a continuation of the representation is likely to result in a violation of these rules or the State Bar Act; or

(10) the lawyer believes* in good faith, in a proceeding pending before a tribunal, * that the tribunal* will find the existence of other good cause for withdrawal.

These authorities combine to require current CJA Panel counsel Santos to withdraw from representation immediately if the relief requested in portion A and B are not granted.

## CONCLUSION

The federal government cannot maintain the fiction of providing constitutionally adequate counsel while refusing to pay for such representation. The prolonged non-payment of

appointed counsel violates Defendant's Sixth Amendment rights and the fundamental guarantee

of *Gideon v. Wainwright*, warranting dismissal of the indictment.

Defendant Ortiz respectfully requests this Court Grant this Motion to Dismiss the indictment.  Should the motion not be granted, Counsel respectfully requests to withdraw as appointed CJA Counsel for Mr. Ortiz.

Dated:  October 30, 2025

Respectfully,

*/s/ Dina L. Santos*
DINA L. SANTOS
Attorney for Defendant
JULIAN RAYMON ORTIZ