EXHIBIT D

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                    No. 2:24-cr-00079-DJC

12                       Plaintiff,

13   v.                                           ORDER

14   STEPHAN JAMES EVANOVICH,

15                       Defendant.

16

17        It is a longstanding principle that access to counsel is a fundamental right of

18   criminal defendants under the Sixth Amendment and necessary for the operation of a

19   fair system of criminal justice.  Defendant's Counsel, who is appointed and assigned to

20   represent Defendant pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A,

21   has not received compensation for his representation since July 2025.  Defendant

22   asks that the Court find that the failure to compensate defense counsel violates this

23   Sixth Amendment right.

24        The Court agrees that the United States Government's failure to provide

25   adequate funding to pay CJA-appointed counsel fundamentally violates Defendant's

26   rights to adequate representation under the Sixth Amendment.  Defendant's Counsel

27   was required to provide representation to Defendant despite the fact that for months

28   he was not provided with resources to pay for investigators, experts, and other

                                            1

1   support staff, or even to support himself. Defendant's Counsel was thus placed in an

2   entirely untenable position. To expect Defendant's Counsel to adequately prepare for

3   a trial currently set for February 2026 while consistently denying him the tools to do so

4   would be, in this Court's view, not only unconscionable, but also unconstitutional.

5          In the time since the filing of this motion and the issuance of this order,

6   Congress has passed, and the President has signed, a continuing resolution that

7   provides funds for both outstanding payments to CJA panel attorneys and ongoing

8   operations. This does not alter the Court's analysis as to whether a violation of

9   Defendant's Sixth Amendment rights occurred. But it does affect the Court's

10  determination of the appropriate remedy for that violation. For the reasons stated

11  below, the Court finds that the appropriate remedy is to permit Defendant's Counsel

12  whatever continuance is required to provide adequate representation to his client.

13                                    **BACKGROUND**

14         Defendant was indicted on April 4, 2024, on one count of conspiracy to

15  transport property interstate, in violation of 18 U.S.C. § 371, and four counts of

16  interstate transportation of stolen property in violation of interstate transportation of

17  stolen property in violation of 18 U.S.C. § 3214. (ECF No. 1.) The Office of the Federal

18  Defender was appointed to represent Defendant at his initial appearance (*see* ECF

19  No. 10), and current counsel was substituted to represent Defendant in July 2025

20  (ECF No. 89). On June 12, 2025, the Court set a trial date of February 23, 2026. (ECF

21  No. 86.) Attached to this trial date was a Rule 12 Motion deadline of November 6,

22  2025, and a Trial Confirmation Hearing date of December 11, 2025. (*Id.*) Defendant

23  remains in custody at the time of this Order.

24         Funding for CJA counsel ran out in July 2025. Defendant's Counsel represents

25  that "[he] (along with every other lawyer who accepts CJA-appointed cases) was

26  assured that payments would resume once Congress passed a budget for Fiscal Year

27  2026." (Mot. (ECF No. 101) at 2.) Due to the ongoing lapse in funding, however,

28  Defendant's Counsel has not been paid since CJA funding ran out in July. (*Id.*)

1    Defendant filed the present Motion on October 3, 2025.  (*See* Mot.)  The

2    Motion is fully briefed, and argument was held on October 23, 2025.  (Mot.; Opp'n

3    (ECF No. 103); Reply (ECF No. 104); *see* ECF No. 105.)  The Court allowed

4    Defendant's Counsel to file Supplementary Declarations (*see* ECF Nos. 110, 113), as

5    well as permitted the Government to file a Supplemental Opposition (ECF No. 114)

6    and Defendant to file a Supplemental Reply (ECF No. 117).  The Court heard

7    additional oral argument on November 13, 2025.  (ECF No. 122.)

8                                        **LEGAL STANDARD**

9    Under Federal Rule of Criminal Procedure 12(b), a "party may raise by pretrial

10   motion any defense, objection, or request that the court can determine without a trial

11   on the merits." Fed. R. Crim. P. 12(b)(1).  The Court has inherent supervisory powers

12   to order the dismissal of prosecutions for three reasons: "(1) to implement a remedy

13   for the violation of a recognized statutory or constitutional right; (2) to preserve

14   judicial integrity by ensuring that a conviction rests on appropriate considerations

15   validly before a jury; and (3) to deter future illegal conduct." *United States v. Matta-*

16   *Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995).  An indictment can only be dismissed

17   under the Court's supervisory powers where a defendant suffers "substantial

18   prejudice" and "no lesser remedial action is available[.]" *United States v. Chapman*,

19   524 F.3d 1073, 1087 (9th Cir. 2008) (quoting *United States v. Jacobs,* 855 F.2d 652,

20   655 (9th Cir. 1988) and *United States v. Barrera–Moreno*, 951 F.2d 1089, 1091 (9th Cir.

21   1991)).

22                                         **DISCUSSION**

23   The Sixth Amendment guarantees that "in all criminal prosecutions, the accused

24   shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const.

25   ament XI.  In *Johnson v. Zerbst*, 304 U.S. 458 (1938), the Supreme Court held that,

26   unless waived, a federal criminal defendant must be represented by counsel.  That

27   right was extended to the states in the more well-known decision of *Gideon v.*

28   *Wainwright*, 372 U.S. 335 (1963), in which the Supreme Court held that this right

                                              3

1   requires the appointment of counsel for indigent defendants facing serious criminal

2   charges.  Defendant argues that by failing to pay his attorney or authorize payment for

3   investigative or expert services, this right has been violated.  The Government

4   responds that because appointed counsel remained in this case despite the lack of

5   payment, there can be no Sixth Amendment violation.  The Government further points

6   to several Circuit cases for the proposition that a lawyer must "subordinate his

7   pecuniary interests and honor his primary professional responsibility to his clients in

8   the matter at hand."  (Opp'n at 4 (quoting *United States v. Walter-Eze*, 869 F.3d 891,

9   902 (9th Cir. 2017), and citing *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir.

10  1975)); *see also United States v. Vasquez*, No. 2:25-cr-00135-WBS, 2025 WL 2961906

11  (E.D. Cal. Oct. 20, 2025).)

12        The Government's argument ignores the realities of modern-day criminal

13  practice where court-approved attorneys accept representation of multiple indigent

14  defendants.  These attorneys all accept appointment with the promise of payment and

15  the provision of resources by which they can mount an effective defense on behalf of

16  their clients.  Cases involving retained counsel, or situations in which members of the

17  local bar are appointed to represent specific defendants, are simply inapposite.  If

18  anything, the legislative history of the Criminal Justice Act of 1964 illustrates why

19  failure to provide counsel with adequate resources violates the Sixth Amendment.

20        Criminal defendants in federal proceedings have enjoyed a right to counsel

21  since 1938, *see Johnson v. Zerbst*, 304 U.S. 458 (1938), which was largely

22  implemented by appointing pro bono counsel from the local bar.  *See* Robert J.

23  Kutak, *The Criminal Justice Act of 1964*, 44 Neb. L. Rev. 703, 705 (1965).  This system

24  proved inadequate, however, and in 1961, Attorney General Robert F. Kennedy

25  appointed a committee, chaired by Francis A. Allen of the University of Michigan Law

26  School, to study the problems facing indigent defendants.  *Id.* at 716; *see also* John J.

27  Haugh, *The Federal Criminal Justice Act of 1964: Catalyst in the Continuing

28  Formulation of the Rights of the Criminal Defendant*, 41 Notre Dame L. Rev. 996, 997

1   (1966). The *Allen Committee Report*, as it came to be called, became the "framework

2   for the Criminal Justice Act of 1964." Kutak, *The Criminal Justice Act of 1964*, 44 Neb.

3   L. Rev. at 716; *see also* H.R. Rep. No. 88-864, at 2994–95 (1963). As Attorney General

4   Robert F. Kennedy noted in transmitting a draft of the Criminal Justice Act of 1964 to

5   Congress, "[t]he response of lawyers to appointment by the court to represent the

6   poor is one of the finest traditions of the American Bar; but the circumstances under

7   which counsel in such cases must defend against skilled prosecutors with extensive

8   factfinding resources at their disposal substantially reduce the likelihood for doing

9   justice before the law." H.R. Rep. No. 88-864, at 2995.

10       The *Allen Committee Report* put it in even starker terms and highlighted the

11   importance of compensating defense counsel and giving them access to paid

12   investigators and experts. "The principle of adequate compensation for lawyers

13   performing defense services is an <u>indispensable element</u> of federal legislation

14   providing for a system of <u>adequate</u> representation." *Report of the Attorney General's*

15   *Committee on Poverty and the Administration of Federal Criminal Justice* ("*Allen*

16   *Committee Report*") xii (1963) (emphasis added). As the *Allen Committee Report*

17   further explained:

18           "[A]dequate representation" entails more than making
19           lawyers available to those who would otherwise lack
             counsel. It includes also a range of services,–including
20           pre-trial investigation, location of witnesses, obtaining of
             expert testimony and the like,–the absence of which in
21           many cases may deprive a defendant of adequate defense
             even though a lawyer speaks for the accused in court.
22

23   *Allen Committee Report* at 4. Accordingly, the Committee concluded that the then-

24   prevailing practice of requiring members of the bar to provide pro bono counsel did

25   "not constitute a system of adequate representation for the financially deprived

26   accused," *id.* at 39, and, in the Committee's estimation, was not "capable of

27   constituting such a system" *id.* at 43.

28

1   Having observed the shortcomings in the system of pro bono counsel in

2 providing adequate representation, the *Allen Committee* proposed, and Congress

3 ultimately adopted, the Criminal Justice Act of 1964.  Congress declared the Criminal

4 Justice Act was enacted "[t]o promote the cause of criminal justice by providing for

5 the representation of defendants who are financially unable to obtain an adequate

6 defense in criminal cases in the courts of the United States." Pub. L. No. 88-455, 78

7 Stat. 552 (codified as amended at 18 U.S.C. § 3006A).  Although the rates have

8 changed, then as now the Act required an attorney to be paid for their representation,

9 18 U.S.C. § 3006A(d), and permitted appointed counsel to obtain "investigative,

10 expert, or other services necessary to an adequate defense," which would also be

11 compensated, 18 U.S.C. § 3006A(e) (1964).  The legislative history is clear that

12 Congress believed adequate compensation was necessary to ensure an adequate

13 defense.

14   Congress's conclusion finds ample support in the caselaw.  The right to counsel

15 encompasses not merely the physical presence of an attorney, but also the right to

16 effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984);

17 *see also Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1131 (9th Cir. 2013)

18 ("Mere appointment of counsel to represent an indigent defendant is not enough to

19 satisfy the Sixth Amendment's promise of the assistance of counsel.").  In particular,

20 the Supreme Court has recognized that the right to counsel is meaningless without

21 adequate resources to mount an effective defense.  *See Ake v. Oklahoma*, 470 U.S. 68,

22 77 (1985) (due process requires provision of basic tools of adequate defense).  As the

23 Ninth Circuit has observed, "the right conferred by the Sixth Amendment to effective

24 assistance of counsel implicitly embraces adequate opportunity for the accused and

25 his counsel to consult, advise and make such preparation for arraignment and trial as

26 the facts of the case fairly demand." *Betschart v. Oregon*, 103 F.4th 607, 621 (9th Cir.

27 2024) (quoting *De Roche v. United States*, 337 F.2d 606, 607 (9th Cir. 1964)).  Simply

28

1  put, the right to counsel is meaningless without sufficient resources to mount an

2  effective defense.

3      Having developed an elaborate system of paid, court-appointed

4  representation, which is now decades old and well-established, Congress cannot

5  remove the funding aspect of the system and still expect criminal defendants to

6  receive adequate representation. Rather, the months-long failure to provide funding

7  for a defense violates the Sixth Amendment constitutional right to counsel. The Court

8  concludes that the right to counsel is violated whenever counsel is denied payment or

9  access to compensated investigative resources for a significant period. While this is

10 likely true regardless of the exact factual circumstances, the record here supports

11 Congress's original judgment that payment is required to ensure adequate

12 representation.

13      As indicated by Defendant's Counsel in his declaration, the lack of funding has

14 definite negative impacts on the ability of CJA panel attorneys to provide adequate

15 representation. Counsel notes the impacts on the "defense infrastructure," including

16 Defendant's access to experts, investigators, and service providers. (Fischer Decl.

17 (ECF No. 110) ¶ 35.) Counsel's ex parte declaration describes in greater detail

18 substantial impediments to Defendant's adequate representation imposed by the

19 failure to adequately fund the CJA panel. Repeating these details here is

20 unnecessary, not only because disclosure of that information would be prejudicial, but

21 also because the basic necessities of preparing an adequate criminal defense are

22 readily understood without the need to invade Defendant's Counsel's trial strategy. In

23 any criminal case and here as well, investigations need to be conducted, discovery

24 must be reviewed and discussed with clients, and experts must be consulted and

25 retained. But without funding, defense attorneys are unable to fund investigators to

26 conduct vital investigations, pay support staff to assist in reviewing discovery, and hire

27 experts to provide their services. This is true both because the funds are not available

28 to cover these costs and because third parties, such as paralegals, investigators, and

1    experts, are naturally reluctant or unwilling to take on work on the speculative promise

2    of future compensation.

3            Defendant's Counsel also states that the lack of compensation placed

4    increasing tension between Counsel's ability to provide adequate representation to

5    Defendant and support himself economically. (Fischer Decl. at 2.) At the time his

6    declaration was filed, Defendant's Counsel stated that he is owed "a significant

7    amount of money" for CJA representation (*id.*), a fact that is confirmed by Counsel's ex

8    parte declaration (*see* ECF No. 113). Counsel noted that any time he spent on

9    representing Defendant was time he was not generating income, meaning that

10   Defendant's adequate representation was at odds with the economic realities Counsel

11   faced. (Fischer Decl. at 2.) While it is true that there is a "presumption that the lawyer

12   will subordinate his pecuniary interests and honor his primary professional

13   responsibility to his clients in the matter at hand," *Walter-Eze*, 869 F.3d at 902 (quoting

14   *Jeffers*, 520 F.2d at 1265), that presumption is inapplicable where there is a systematic

15   failure to pay significant sums of money that were promised by the Government.

16           These facts illustrate precisely why adequate representation necessarily

17   requires sufficient resources for counsel to mount a defense. Through Congress's

18   failure to provide sufficient funding for CJA attorneys, Defendant was denied the

19   means to adequately prepare a defense to the criminal charges against him. This was

20   a denial of Defendant's Sixth Amendment right to counsel at a fundamental level.

21           It is also self-evident from the fact of this denial, as well as from the record, that

22   Defendant suffered prejudice from this violation of his constitutional rights. As already

23   noted, in order to prepare their clients' defense, criminal defense attorneys must

24   undertake vital tasks such as reviewing discovery, conducting investigations,

25   preparing trial strategy, and hiring experts. These are all basic tools necessary to

26   provide Defendant with effective representations that have been meaningfully

27   impeded by the longstanding and ongoing lack of funding for Defendant's Counsel.

28   Defendant remains in custody, with criminal charges pending against him. As the

1    Supreme Court has recognized, "[t]o deprive a person of counsel during the period
2    prior to trial may be more damaging than denial of counsel during the trial itself."
3    *Maine v. Moulton*, 474 U.S. 159, 170 (1985). Trial in this matter is also set for February
4    23, 2026, and is rapidly approaching. The present deadline for Rule 12 Motions is
5    November 6, 2025, less than 2 weeks away. Counsel must be able to accomplish vital
6    tasks to adequately represent Defendant at this stage, and the denial of compensation
7    at this stage only amplifies the prejudice to Defendant.
8        Moreover, despite payment for CJA counsel having stopped in July, the
9    Government's prosecution efforts have continued unabated since that time. This
10   means that while Defendant's Counsel was not receiving money to pay investigators,
11   staff, and himself, the Government was able to fully engage in continued investigation
12   and trial preparation efforts without barriers. The United States Government's
13   abdication of its duty to provide funding for Defendant's Counsel stands in stark
14   contrast to the continued funding the prosecution has enjoyed. It is virtually
15   impossible for Defendant not to have been prejudiced by such an unprecedented and
16   glaring imbalance in the criminal justice system.
17       Given the violation of Defendant's constitutional rights and the prejudice
18   Defendant faced because of that violation, the sole question that remains is what
19   remedy is appropriate here. *See Chapman*, 524 F.3d at 1087. When considering an
20   exercise of its supervisory powers for violations of a defendant's rights under the Sixth
21   Amendment, the district court must "tailor[] relief appropriate in the circumstances to
22   assure the defendant the effective assistance of counsel and a fair trial." *United States
23   v. Morrison*, 449 U.S. 361, 365 (1981). The least intrusive available remedial action
24   here is for the Court to grant Defendant whatever continuance Counsel needs to
25   provide Defendant adequate representation. *See Chapman*, 524 F.3d at 1087.
26       Before funding resumed, dismissal without prejudice likely would have been
27   warranted given the ongoing nature of the violation. However, now that the
28   continuing resolution has become law, in the Court's view dismissal is no longer

1    appropriate.  Resources are now available to hire experts and other investigative

2    services, and payments will resume to counsel.  Given that the Sixth Amendment right

3    to counsel is once again ensured,[1] counsel would need to establish some ongoing

4    prejudice to justify the extreme remedy of dismissal.  The Court is uncertain what

5    remedy dismissal without prejudice would provide at this stage, given the

6    Government's ability to immediately refile.  And the more extreme remedy – dismissal

7    with prejudice – is not appropriate here.  Such relief is only appropriate where there is

8    "a clear basis in fact and law for doing so."  *United States v. Isgro*, 974 F.2d 1091, 1097

9    (9th Cir. 1992) (internal citation omitted).  Defendant has not made a showing that

10   such a drastic option is merited.  Thus, the Court finds that permitting Defendant's

11   Counsel whatever additional time is necessary for him to provide his client with

12   adequate representation is the appropriate remedy.

13                                **CONCLUSION**

14         The Court reiterates and emphasizes that by this Order, the Court finds that

15   Defendant's Sixth Amendment rights were violated by the failure to provide funding

16   for Defendant's representation.  While the Court does not grant the remedies

17   Defendant initially sought, the finding of that violation occurred is itself significant

18   given the importance of the Sixth Amendment right to counsel.  "'Of all the rights that

19   an accused person has, the right to be represented by counsel is by far the most

20   pervasive for it affects his ability to assert any other rights he may have.'"  *United States*

21   *v. Cronic,* 466 U.S. 648, 654 (1984) (quoting Walter V. Schaefer, *Federalism and State*

22   *Criminal Procedure,* 70 Harv. L. Rev. 1, 8 (1956)).  To ensure a functioning criminal

23   justice system, the political branches must ensure that adequate resources are

24   available for a criminal defendant to mount his or her defense.  Though the Court

25   _____

26   [1] The Court appreciates Counsel's wariness as the continued availability of resources given that the
     continuing resolution only ensures funding through January 30, 2026.  The Court expresses no opinion

27   on what would constitute an appropriate remedy should there be another significant lapse in funding.
     The Court does not view it as appropriate to rely on hypothetical future situations in determining what

28   the appropriate remedy is now.

1    finds that the remedy of dismissal is not warranted here, it may well be appropriate

2    should a further lapse occur in the future, depending on the particular facts at hand.

3        Accordingly, IT IS HEREBY ORDERED that Defendant Stephan James

4    Evanovich's Motion to Dismiss (ECF No. 101) is GRANTED IN PART and DENIED IN

5    PART.  Counsel for Defendant shall be granted whatever continuances Counsel

6    requires to fulfill his obligations to the Defendant, consistent with the Sixth

7    Amendment to the Constitution.

8

9        IT IS SO ORDERED.

10   Dated:   **November 17, 2025**

     Hon. Daniel J. Calabretta
     UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-cr-00063-DJC |
| Plaintiff, | |
| v. | ORDER |
| JEREMIAH I'AMAFANA SALANOA, | |
| Defendant. | |

It is a longstanding principle that access to counsel is a fundamental right of criminal defendants under the Sixth Amendment and necessary for the operation of a fair system of criminal justice.  Defendant's Counsel, who is appointed and assigned to represent Defendant pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, has not received compensation for his representation since July 2025.  Defendant asks that the Court find that the failure to compensate defense counsel violates this Sixth Amendment right.

The Court agrees that the United States Government's failure to provide adequate funding to pay CJA-appointed counsel fundamentally violates Defendant's rights to adequate representation under the Sixth Amendment.  Defendant's Counsel was required to provide representation to Defendant despite the fact that for months he was not provided with resources to pay for investigators, experts, and other

1   support staff, or even to support himself. Defendant's Counsel was thus placed in an

2   entirely untenable position. To expect Defendant's Counsel to adequately prepare for

3   his client's defense while consistently denying him the tools to do so would be, in this

4   Court's view, not only unconscionable, but also unconstitutional.

5        In the time since the filing of this motion and the issuance of this order,

6   Congress has passed, and the President has signed, a continuing resolution that

7   provides funds for both outstanding payments to CJA panel attorneys and ongoing

8   operations. This does not alter the Court's analysis as to whether a violation of

9   Defendant's Sixth Amendment rights occurred. But it does affect the Court's

10  determination of the appropriate remedy for that violation. For the reasons stated

11  below, the Court finds that the appropriate remedy is to permit Defendant's Counsel

12  whatever continuance is required to provide adequate representation to his client.

13                              **BACKGROUND**

14       A complaint was initially filed against Defendant on February 24, 2025. (ECF

15  No. 1.) Defendant was ultimately indicted on March 13, 2025, on three counts of

16  distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), one count of distribution

17  of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and one count of

18  possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

19  (ECF No. 12.) Current counsel was appointed to represent Defendant at his initial

20  appearance on February 27, 2025. (ECF No. 6.) Defendant remains in custody at the

21  time of this Order.

22       Funding for CJA counsel ran out in July 2025. Defendant's Counsel states that

23  "[p]ayments were expected to resume at the beginning of the new fiscal year on

24  October 1, 2025[,]" but did not ultimately resume due to the lapse in government

25  funding. (Mot. (ECF No. 24) at 3.) Due to the ongoing lapse in funding, however,

26  Defendant's Counsel has not been paid since CJA funding ran out in July. (*Id.*)

27       Defendant filed the present Motion on October 7, 2025. (*See* Mot.) The

28  Motion is fully briefed, and argument was held on October 23, 2025. (Mot.; Opp'n

1   (ECF No. 26); Reply (ECF No. 28); *see* ECF No. 29.)  The Court allowed Defendant's

2   Counsel to file Supplementary Declarations (*see* ECF Nos. 31, 32), as well as permitted

3   the Government to file a Supplemental Opposition (ECF No. 33) and Defendant to file

4   a Supplemental Reply (ECF No. 34).  The Court heard additional oral argument on

5   November 13, 2025.  (ECF No. 35.)

6                                    **LEGAL STANDARD**

7           Under Federal Rule of Criminal Procedure 12(b), a "party may raise by pretrial

8   motion any defense, objection, or request that the court can determine without a trial

9   on the merits."  Fed. R. Crim. P. 12(b)(1).  The Court has inherent supervisory powers

10  to order the dismissal of prosecutions for three reasons: "(1) to implement a remedy

11  for the violation of a recognized statutory or constitutional right; (2) to preserve

12  judicial integrity by ensuring that a conviction rests on appropriate considerations

13  validly before a jury; and (3) to deter future illegal conduct."  *United States v. Matta-*

14  *Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995).  An indictment can only be dismissed

15  under the Court's supervisory powers where a defendant suffers "substantial

16  prejudice" and "no lesser remedial action is available[.]"  *United States v. Chapman*,

17  524 F.3d 1073, 1087 (9th Cir. 2008) (quoting *United States v. Jacobs,* 855 F.2d 652,

18  655 (9th Cir. 1988) and *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir.

19  1991)).

20                                      **DISCUSSION**

21          The Sixth Amendment guarantees that "in all criminal prosecutions, the accused

22  shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const.

23  ament XI.  In *Johnson v. Zerbst*, 304 U.S. 458 (1938), the Supreme Court held that,

24  unless waived, a federal criminal defendant must be represented by counsel.  That

25  right was extended to the states in the more well-known decision of *Gideon v.*

26  *Wainwright*, 372 U.S. 335 (1963), in which the Supreme Court held that this right

27  requires the appointment of counsel for indigent defendants facing serious criminal

28  charges.  Defendant argues that by failing to pay his attorney or authorize payment for

1    investigative or expert services, this right has been violated.  The Government

2    responds that because appointed counsel remained in this case despite the lack of

3    payment, there can be no Sixth Amendment violation.  The Government further points

4    to several Circuit cases for the proposition that a lawyer must "subordinate his

5    pecuniary interests and honor his primary professional responsibility to his clients in

6    the matter at hand."  (Opp'n at 4–5 (quoting *United States v. Walter-Eze*, 869 F.3d 891,

7    902 (9th Cir. 2017), and citing *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir.

8    1975)); *see also United States v. Vasquez*, No. 2:25-cr-00135-WBS, 2025 WL 2961906

9    (E.D. Cal. Oct. 20, 2025).)

10        The Government's argument ignores the realities of modern-day criminal

11    practice where court-approved attorneys accept representation of multiple indigent

12    defendants.  These attorneys all accept appointment with the promise of payment and

13    the provision of resources by which they can mount an effective defense on behalf of

14    their clients.  Cases involving retained counsel, or situations in which members of the

15    local bar are appointed to represent specific defendants, are simply inapposite.  If

16    anything, the legislative history of the Criminal Justice Act of 1964 illustrates why

17    failure to provide counsel with adequate resources violates the Sixth Amendment.

18        Criminal defendants in federal proceedings have enjoyed a right to counsel

19    since 1938, *see Johnson v. Zerbst*, 304 U.S. 458 (1938), which was largely

20    implemented by appointing pro bono counsel from the local bar.  *See* Robert J.

21    Kutak, *The Criminal Justice Act of 1964*, 44 Neb. L. Rev. 703, 705 (1965).  This system

22    proved inadequate, however, and in 1961, Attorney General Robert F. Kennedy

23    appointed a committee, chaired by Francis A. Allen of the University of Michigan Law

24    School, to study the problems facing indigent defendants.  *Id.* at 716; *see also* John J.

25    Haugh, *The Federal Criminal Justice Act of 1964: Catalyst in the Continuing*

26    *Formulation of the Rights of the Criminal Defendant*, 41 Notre Dame L. Rev. 996, 997

27    (1966).  The *Allen Committee Report*, as it came to be called, became the "framework

28    for the Criminal Justice Act of 1964."  Kutak, *The Criminal Justice Act of 1964*, 44 Neb.

1   L. Rev. at 716; *see also* H.R. Rep. No. 88-864, at 2994–95 (1963).  As Attorney General

2   Robert F. Kennedy noted in transmitting a draft of the Criminal Justice Act of 1964 to

3   Congress, "[t]he response of lawyers to appointment by the court to represent the

4   poor is one of the finest traditions of the American Bar; but the circumstances under

5   which counsel in such cases must defend against skilled prosecutors with extensive

6   factfinding resources at their disposal substantially reduce the likelihood for doing

7   justice before the law."  H.R. Rep. No. 88-864, at 2995.

8           The *Allen Committee Report* put it in even starker terms and highlighted the

9   importance of compensating defense counsel and giving them access to paid

10  investigators and experts.  "The principle of adequate compensation for lawyers

11  performing defense services is an <u>indispensable element</u> of federal legislation

12  providing for a system of <u>adequate</u> representation."  *Report of the Attorney General's*

13  *Committee on Poverty and the Administration of Federal Criminal Justice ("Allen*

14  *Committee Report")* xii (1963) (emphasis added).  As the *Allen Committee Report*

15  further explained:

16          "[A]dequate representation" entails more than making
            lawyers available to those who would otherwise lack
17          counsel.  It includes also a range of services,—including
            pre-trial investigation, location of witnesses, obtaining of
18          expert testimony and the like,—the absence of which in
            many cases may deprive a defendant of adequate defense
19          even though a lawyer speaks for the accused in court.
20

21  *Allen Committee Report* at 4.  Accordingly, the Committee concluded that the then-

22  prevailing practice of requiring members of the bar to provide pro bono counsel did

23  "not constitute a system of adequate representation for the financially deprived

24  accused," *id.* at 39, and, in the Committee's estimation, was not "capable of

25  constituting such a system" *id.* at 43.

26          Having observed the shortcomings in the system of pro bono counsel in

27  providing adequate representation, the *Allen Committee* proposed, and Congress

28  ultimately adopted, the Criminal Justice Act of 1964.  Congress declared the Criminal

1    Justice Act was enacted "[t]o promote the cause of criminal justice by providing for

2    the representation of defendants who are financially unable to obtain an adequate

3    defense in criminal cases in the courts of the United States." Pub. L. No. 88-455, 78

4    Stat. 552 (codified as amended at 18 U.S.C. § 3006A). Although the rates have

5    changed, then as now the Act required an attorney to be paid for their representation,

6    18 U.S.C. § 3006A(d), and permitted appointed counsel to obtain "investigative,

7    expert, or other services necessary to an adequate defense," which would also be

8    compensated, 18 U.S.C. § 3006A(e) (1964). The legislative history is clear that

9    Congress believed adequate compensation was necessary to ensure an adequate

10    defense.

11    Congress's conclusion finds ample support in the caselaw. The right to counsel

12    encompasses not merely the physical presence of an attorney, but also the right to

13    effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984);

14    *see also Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1131 (9th Cir. 2013)

15    ("Mere appointment of counsel to represent an indigent defendant is not enough to

16    satisfy the Sixth Amendment's promise of the assistance of counsel."). In particular,

17    the Supreme Court has recognized that the right to counsel is meaningless without

18    adequate resources to mount an effective defense. *See Ake v. Oklahoma*, 470 U.S. 68,

19    77 (1985) (due process requires provision of basic tools of adequate defense). As the

20    Ninth Circuit has observed, "the right conferred by the Sixth Amendment to effective

21    assistance of counsel implicitly embraces adequate opportunity for the accused and

22    his counsel to consult, advise and make such preparation for arraignment and trial as

23    the facts of the case fairly demand." *Betschart v. Oregon*, 103 F.4th 607, 621 (9th Cir.

24    2024) (quoting *De Roche v. United States*, 337 F.2d 606, 607 (9th Cir. 1964)). Simply

25    put, the right to counsel is meaningless without sufficient resources to mount an

26    effective defense.

27    Having developed an elaborate system of paid, court-appointed

28    representation, which is now decades old and well-established, Congress cannot

1  remove the funding aspect of the system and still expect criminal defendants to

2  receive adequate representation.  Rather, the months-long failure to provide funding

3  for a defense violates the Sixth Amendment constitutional right to counsel.  The Court

4  concludes that the right to counsel is violated whenever counsel is denied payment or

5  access to compensated investigative resources for a significant period.  While this is

6  likely true regardless of the exact factual circumstances, the record here supports

7  Congress's original judgment that payment is required to ensure adequate

8  representation.

9        As indicated by Defendant's Counsel in his declaration, the lack of funding has

10  definite negative impacts on the ability of CJA panel attorneys to provide adequate

11  representation.  Counsel joined in the concerns raised by Defendant's Counsel in

12  *United States v. Evanovich*, 2:24-cr-00079.  (Leras Decl. (ECF No. 31) ¶ 6.)  Counsel

13  also notes the restrictions that a lack of funding places on investigation work and the

14  review of discovery in this case.  (*Id.* ¶¶ 12–14.)  Counsel offered to provide an ex

15  parte declaration providing additional details about the impediments to Defendant's

16  adequate representation imposed by the failure to adequately fund the CJA panel.

17  (*Id.* ¶¶ 14, 21.)  This is ultimately unnecessary because the basic necessities of

18  preparing an adequate criminal defense are readily understood without such a

19  declaration.  In any criminal case and here as well, investigations need to be

20  conducted, discovery must be reviewed and discussed with clients, and experts must

21  be consulted and retained.  But without funding, defense attorneys are unable to fund

22  investigators to conduct vital investigations, pay support staff to assist in reviewing

23  discovery, and hire experts to provide their services.  This is true both because the

24  funds are not available to cover these costs and because third parties, such as

25  paralegals, investigators, and experts, are naturally reluctant or unwilling to take on

26  work on the speculative promise of future compensation.

27        Defendant's Counsel also represents that he has substantial outstanding

28  vouchers for CJA representation.  (Leras Decl. ¶ 20.)  Counsel states that at the time

1    his declaration was filed, he was owed "nearly $118,000" across all CJA cases he has

2    worked on, and that he has not been paid for any work conducted on this case. (*Id.*

3    ¶¶ 20–21.) While it is true that there is a "presumption that the lawyer will subordinate

4    his pecuniary interests and honor his primary professional responsibility to his clients

5    in the matter at hand," *Walter-Eze*, 869 F.3d at 902 (quoting *Jeffers*, 520 F.2d at 1265),

6    that presumption is inapplicable where there is a systematic failure to pay significant

7    sums of money that were promised by the Government.

8         These facts illustrate precisely why adequate representation necessarily

9    requires sufficient resources for counsel to mount a defense. Through Congress's

10   failure to provide sufficient funding for CJA attorneys, Defendant was denied the

11   means to adequately prepare a defense to the criminal charges against him. This was

12   a denial of Defendant's Sixth Amendment right to counsel at a fundamental level.

13        It is also self-evident from the fact of this denial, as well as from the record, that

14   Defendant suffered prejudice from this violation of his constitutional rights. As already

15   noted, in order to prepare their clients' defense, criminal defense attorneys must

16   undertake vital tasks such as reviewing discovery, conducting investigations,

17   preparing trial strategy, and hiring experts. These are all basic tools necessary to

18   provide Defendant with effective representations that have been meaningfully

19   impeded by the longstanding and ongoing lack of funding for Defendant's Counsel.

20   Defendant remains in custody, with criminal charges pending against him. As the

21   Supreme Court has recognized, "[t]o deprive a person of counsel during the period

22   prior to trial may be more damaging than denial of counsel during the trial itself."

23   *Maine v. Moulton*, 474 U.S. 159, 170 (1985). While a trial date is not yet set in this

24   matter, this is still an important time where Defendant's Counsel must accomplish vital

25   tasks to adequately represent Defendant.

26        Moreover, despite payment for CJA counsel having stopped in July, the

27   Government's prosecution efforts have continued unabated since that time. This

28   means that while Defendant's Counsel was not receiving money to pay investigators,

1  staff, and himself, the Government was able to fully engage in continued investigation

2  and trial preparation efforts without barriers. The United States Government's

3  abdication of its duty to provide funding for Defendant's Counsel stands in stark

4  contrast to the continued funding the prosecution has enjoyed. It is virtually

5  impossible for Defendant not to have been prejudiced by such an unprecedented and

6  glaring imbalance in the criminal justice system.

7       Given the violation of Defendant's constitutional rights and the prejudice

8  Defendant faced because of that violation, the sole question that remains is what

9  remedy is appropriate here. *See Chapman*, 524 F.3d at 1087. When considering an

10  exercise of its supervisory powers for violations of a defendant's rights under the Sixth

11  Amendment, the district court must "tailor[] relief appropriate in the circumstances to

12  assure the defendant the effective assistance of counsel and a fair trial." *United States

13  v. Morrison*, 449 U.S. 361, 365 (1981). The least intrusive available remedial action

14  here is for the Court to grant Defendant whatever continuance Counsel needs to

15  provide Defendant adequate representation. *See Chapman*, 524 F.3d at 1087.

16       Before funding resumed, dismissal without prejudice likely would have been

17  warranted given the ongoing nature of the violation. However, now that the

18  continuing resolution has become law, in the Court's view dismissal is no longer

19  appropriate. Resources are now available to hire experts and other investigative

20  services, and payments will resume to counsel. Given that the Sixth Amendment right

21  to counsel is once again ensured, counsel would need to establish some ongoing

22  prejudice to justify the extreme remedy of dismissal. The Court is uncertain what

23  remedy dismissal without prejudice would provide at this stage, given the

24  Government's ability to immediately refile. And the more extreme remedy – dismissal

25  with prejudice – is not appropriate here. Such relief is only appropriate where there is

26  "a clear basis in fact and law for doing so." *United States v. Isgro*, 974 F.2d 1091, 1097

27  (9th Cir. 1992) (internal citation omitted). Defendant has not made a showing that

28  such a drastic option is merited. Thus, the Court finds that permitting Defendant's

1   Counsel whatever additional time is necessary for him to provide his client with

2   adequate representation is the appropriate remedy.

3                              **CONCLUSION**

4           The Court reiterates and emphasizes that by this Order, the Court finds that

5   Defendant's Sixth Amendment rights were violated by the failure to provide funding

6   for Defendant's representation.  While the Court does not grant the remedies

7   Defendant initially sought, the finding of that violation occurred is itself significant

8   given the importance of the Sixth Amendment right to counsel.  "'Of all the rights that

9   an accused person has, the right to be represented by counsel is by far the most

10  pervasive for it affects his ability to assert any other rights he may have.'" *United States*

11  *v. Cronic,* 466 U.S. 648, 654 (1984) (quoting Walter V. Schaefer, *Federalism and State*

12  *Criminal Procedure,* 70 Harv. L. Rev. 1, 8 (1956)).  To ensure a functioning criminal

13  justice system, the political branches must ensure that adequate resources are

14  available for a criminal defendant to mount his or her defense.  Though the Court

15  finds that the remedy of dismissal is not warranted here, it may well be appropriate

16  should a further lapse occur in the future, depending on the particular facts at hand.

17          Accordingly, IT IS HEREBY ORDERED that Defendant Jeremiah I'Amafana

18  Salanoa's Motion to Dismiss (ECF No. 26) is GRANTED IN PART and DENIED IN PART.

19  Counsel for Defendant shall be granted whatever continuances Counsel requires to

20  fulfill his obligations to the Defendant, consistent with the Sixth Amendment to the

21  Constitution.

22
23          IT IS SO ORDERED.

24  Dated:  __**November 17, 2025**__                    _Daniel J. Calabretta_
                                                        ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
25                                                      Hon. Daniel J. Calabretta
                                                        UNITED STATES DISTRICT JUDGE
26

27

28