ERIC GRANT
United States Attorney
JASON HITT
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>          v.<br><br>JULIAN ORTIZ,<br><br>                     Defendant. | CASE NO. 2:24-CR-00302-JAM<br><br>UNITED STATES'S REPLY IN SUPPORT OF RECONSIDERATION |

The United States, by and through Assistant United States Attorney Jason Hitt, respectfully submits this reply in support of reconsideration of the Court' Order dismissing the Indictment against defendant Julian Ortiz ("defendant"), filed on November 12, 2025. ECF 30.[1]

**ANALYSIS**

    A.    <u>**Reconsideration is appropriate because the Sixth Amendment issue is moot**</u>

This Court should find that the motion to dismiss is moot because there is no longer a live "case or controversy" that exists on the Sixth Amendment right to counsel under Article III of the Constitution. "Constitutional mootness is a jurisdictional issue requiring the Court to determine whether

---

[1] At the outset, the United States acknowledges the personal and financial hardships that the lapse in funding placed on CJA panel attorneys, many of whom the undersigned has considered colleagues and friends for more than 20 years. The arguments made in this, and many related motions pending before district courts in this District, are in no way intended to ignore or undermine the hard work and dedication of CJA attorneys during this unprecedented time.

a case or controversy exists under Article III of the Constitution." *White v. United States Army Corps of Eng'rs*, 659 F. Supp. 3d 1045, 1051 (N.D. Cal. 2023) (citing *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015)).  A case must present a live controversy to resist dismissal for mootness.  *Id.*

Here, it is undisputed that the CJA funding lapse ended and payment vouchers are being processed at the time of this writing.  As a result, the Court no longer has a live "controversy" about the CJA funding lapse before it and, accordingly, there is no case or controversy within the meaning of those constitutional terms and the court lacks subject matter jurisdiction to hear the claim.  *See Baker v. Carr*, 369 U.S. 186, 198 (1962).

In the alternative, the Court should exercise its discretion to find that the issue of the CJA funding lapse is moot as a matter of prudential mootness.  "'The doctrine of prudential mootness permits a court to dismiss an [action] not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief . . . . '"  *White*, 659 F. Supp. 3d at 1051 (quoting *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014)).  Here, prudential mootness applies because the sole basis, rationale, and circumstances for the motion to dismiss in this case has dramatically changed since the beginning of litigation that forestall any occasion for meaningful relief.[2]

Indeed, as a result of the end to the lapse in CJA funding, at least one other judge in this District has ruled that defense motions to dismiss indictments based on that lapse are now moot.  *See United States v. Colindrez-Erazo*, Case No. 2:24-cr-00096-DAD, ECF 49, Order, dated November 25, 2025, attached as Exhibit A, and incorporated here by reference.  The United States respectfully requests that the Court follow the same approach as *Colindez-Erazo* and find that Ortiz's motion to dismiss is moot.

---

[2]  A finding of mootness also avoids the problem of a district court being invited to issue a prohibited advisory opinion on an issue that is now moot.  "[A] federal court's 'role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.'"  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  The prohibition against issuing advisory opinions stands at the core of Article III's limitation on federal judicial power and underpins the justiciability doctrines of standing, ripeness, and mootness.  *Cole-Tindall v. City of Burien*, 768 F. Supp. 3d 1178, 1182 (W.D. Wash. 2024) (citing *Westlands Water Dist. v. Nat. Res. Def. Council*, 276 F. Supp. 2d 1046, 1051 (E.D. Cal. 2003); *see also W. Oil & Gas Assoc. v. Sonoma Cnty.*, 905 F.2d 1287, 1290 (9th Cir. 1990) ("The ripeness and mootness doctrines are based in part upon the Article III requirement that courts decide only cases or controversies.").

1   Ortiz contends the alleged violation of his Sixth Amendment right to counsel "began when Mr.
2   Ortiz was denied his right beginning in June of 2025." ECF 33, at 2.  The problem with this argument is
3   that June 2025 cannot be when the alleged violation began because, under the existing CJA
4   reimbursement structure, counsel could not expect to receive any CJA payments for her work in
5   representing Oritz until October 1, 2025.
6   In addition, counsel represented that, "[d]espite the lack of compensation, Counsel, investigator,
7   paralegal, and expert have continued to represent the Defendant to prevent immediate prejudice . . . ."
8   ECF 23, at 2.  Counsel did not offer to withdraw when the initial motion to dismiss was filed on October
9   4.  Instead, the offer to withdraw first appeared with a pleading filed on October 30, 2025.  ECF 28, at
10  8.[3]  Thus, to the extent the Court can overcome the mootness problem, the proper window of time to
11  examine any alleged Sixth Amendment violation or any prejudice flowing from the violation is from
12  October 1, until the point when funding resumed on November 13, 2025, after the President signed HR
13  5371 into law.  During that timeframe, Ortiz's counsel filed and argued a motion to dismiss and the
14  Court granted it.  Thus, it is hard to imagine any showing of prejudice given Ortiz's counsel's effective
15  representation in having his indictment dismissed.
16  To the extent Ortiz focuses on impairment to his ability to prepare for trial, the remedy is not
17  dismissal, it is a continuance of the trial date or substitution of counsel for a lawyer who can be ready.
18  **B.       The *Evanovich* opinion is flawed and undermines Ortiz's demand for dismissal**
19  To the extent Ortiz relies on *Evanovich* for authority in support of dismissal, that case runs

---

[3] In its Order, this Court rejected the government's argument that withdrawal and appointment of new counsel was a less-drastic remedy to dismissal by speculating that "[r]equiring or allowing counsel to withdraw would only result in Defendant being left involuntarily *in propria persona* with a looming trial date." ECF 30, Order, at 10–11.  The Court also explained that it did not understand "how the Court might find alternative counsel for Defendant given the severe funding lapse discussed above." *Id.* at 10.  The problem with this portion of the Order is that, as explained during oral argument on this motion, it is inconsistent with what was actually happening in the District at the time.  Specifically, during the time period of the funding lapse, twelve appointed or retained counsel appeared to represent drug trafficking defendants in *United States v. Tolentino, et al.*, Case No. 2:25-cr-00247-DJC, between October 21, 2025, and November 13, 2025.  None of the defendants were left *in propia persona*.  Appointment of new counsel was available when the Court issued the dismissal Order in this case, just as it is now.  The government incorporates by refence the docket in that case and asks that it made part of the record for any eventual appellate review in this case.  The Court should also take judicial notice of the facts in the *Tolentino* case regarding the appointment of counsel during the lapse because they are not subject to serious dispute and originate from the Court's online docketing system.  Fed. R. Evid. 201(c)(2).

counter to Ortiz's requested relief for at least two reasons.

First, the *Evanovich* court issued its opinion on November 17, 2025 – four days after funding resumed. Nevertheless, the district court failed to address whether any alleged Sixth Amendment violation was rendered moot by funding resuming.[4] With this glaring omission, the *Evanovich* opinion is troubling because it reaches back in time to address an issue that is no longer ripe before the district court and it does so in order to provide an expansive prohibited advisory opinion about the impact of a past funding lapse. The opinion also fails to address why the continued representation of counsel with funding does not remedy the alleged past violation. However, the remedy offered in the opinion (unlimited continuances) suggests that any alleged past violation is rendered moot by continued representation.

The second reason *Evanovich* is inapposite is that the remedy provided there – unlimited continuances – is inconsistent with the dismissal sought by Ortiz. Although the *Evanovich* court reached back in time to define an extraordinarily broad and subjective "right to counsel" that is not found in any other precedent, the *Evanovich* court declined to provide dismissal as a remedy. Instead, the *Evanovich* court held, "[N]ow that the continuing resolution has become law, in the Court's view dismissal is no longer appropriate." *United States v. Evanovich*, Case No. 2:24-cr-00079-DJC, ECF 124, Order, at 10–11.

The rationale in *Evanovich* wholly undermines Ortiz's insistence on a dismissal in this case. "Resources are now available to hire experts and other investigative services, and payments will resume to counsel. Given that the Sixth Amendment right to counsel is once again ensured, counsel would need to establish some ongoing prejudice to justify the extreme remedy of dismissal." *Id.* at 11 (footnote omitted). In sum, *Evanovich* runs counter to Otiz's demand for a dismissal because "[r]esources are

---

[4] The *Evanovich* court attempted to address mootness with a conclusory, unsupported assertion at the beginning of the opinion. "In the time since the filing of this motion and the issuance of this order, Congress has passed, and the President has signed, a continuing resolution that provides funds for both outstanding payments to CJA panel attorneys and ongoing operations. This does not alter the Court's analysis as to whether a violation of Defendant's Sixth Amendment rights occurred." *United States v. Evanovich*, Case No. 2:24-cr-00079-DJC, ECF 124, Order, at 2. This analysis would make sense in the context of civil rights claim brought under 42 U.S.C. § 1983. But, it makes no sense in the context of a pending criminal prosecution where counsel remains representing the defendant and that counsel is being funded at the time of the Order being issued.

now available to hire experts and other investigative services, and payments will resume to counsel" and, accordingly, there can be no Sixth Amendment violation in the case of now – certainly nothing justifying the extreme remedy of dismissal. *Id.*

### C. Ortiz cannot demonstrate prejudice justifying dismissal or that a less-drastic remedy is not available

Moreover, Ortiz has made no showing of ongoing prejudice to justify the extreme remedy of dismissal. Instead, close examination of his pleadings reveals that Ortiz relies on what he believes may happen in January 2026 to speculate about how those events may affect his lawyer's performance now. *See* ECF 33, at 5 (citing "[s]ubstantial work" for trial including locating witnesses, undefined "files" that "need to be ordered and copied," a phone expert who is busy, and preparing routine pretrial motions; claiming that this work "cannot likely be done before the next impending shutdown."). One obvious response to this alleged prejudice arising from the past funding lapse is for Ortiz to request a continuance in order to afford his counsel adequate time to prepare, as the district court in *Evanovich* did. But the point of Ortiz's present motion is not to prepare effectively for trial; rather, the point is to identify a problem and then demand dismissal as the only available remedy. Indeed, by defining the right to counsel as a subjective one defined by each defense counsel in each case without an objective test, district courts create a perverse incentive for counsel to continue manufacturing examples of prejudice in order to get the desired result for their client: dismissal. This is precisely why the Ninth Circuit requires district courts to exercise caution in acting under their supervisory authority to dismiss a valid indictment. *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993) ("[E]ven assuming that Lyons did act unethically, we question the prudence of remedying that misconduct through dismissal of a valid indictment.").

### D. District courts cannot rely on supervisory authority to remedy and deter the Legislative Branch by dismissing a valid indictment brought through the Executive Branch

"[R]emedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981). "Because it is a drastic step, dismissing an indictment is a disfavored remedy." *United States v. Rogers*, 751 F.2d 1074, 1076–77 (9th Cir. 1985) (citing *United States v. Blue*, 384 U.S. 251, 255

(1966)). To justify the "extreme remedy" of dismissal, "the *government's* conduct must have caused substantial prejudice to the defendant and been flagrant in its disregard for the limits of appropriate professional conduct." *Lopez*, 4 F.3d at 1464 (citing *United States v. Barrera–Moreno*, 951 F.2d 1089, 1093 (9th Cir. 1991), *cert. denied*, 113 S.Ct. 417 (1992)) (emphasis added). It is worth emphasizing that the "government" used in the context of a district court's exercise of supervisory authority to dismiss a criminal indictment has always referred to agents and representatives of the Executive Branch. A district court's supervisory authority to dismiss a valid criminal indictment has never been extended to reach action (or inaction) by the Legislative Branch.

This makes sense because the core rationale of a district court having any supervisory authority over a separate branch of government arises "when the investigatory or prosecutorial process has violated a federal constitutional or statutory right" and that violation can be addressed through suppression of evidence, referral for attorney discipline, contempt proceedings, dismissal, or some other remedial action that is directly tethered to the prejudice within the criminal case. *Barrera–Moreno*, 951 F.2d at 1092 ("Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and *no lesser remedial action is available*.") (emphasis added). The concept is that the remedy will remediate the evidentiary or strategic disadvantage occasioned by the violation in the criminal case and/or deter future violations of Constitution by the Executive Branch in criminal matters. *Id.* And, even that authority is carefully limited. *Id.* ("Courts do not have the authority to supervise out-of-court executive procedure in the absence of a constitutional or statutory violation.").

In this case, there is no logical nexus between precedent defining the parameters of a district court's supervisory authority to remedy and deter Executive Branch conduct and the Legislative Branch's inability to pass a timely budget. Simply put, dismissal is not an available or appropriate remedy because a district court in a criminal case is not remedying failures of Congress by dismissing a valid indictment; nor is a district court in a criminal case deterring Congress from future dysfunction.[5] *See United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985) ("Similarly, the separation-of-powers

---

[5] Indeed, the fact that the district court issued *Evanovich* issued its opinion after Congress passed a budget precludes deterrence as a rationale for that exercise of supervisory authority.

1  principle suggests that the creation of a rule by supervisory power can be justified only when a
2  recognized right has been violated. Even then, it may be wise for the courts to await congressional
3  action.").

4     As an example of the limitations on a district court's supervisory authority, the Ninth Circuit
5  once tried to define the authority to be expansive and include "check[ing] . . . governmental excesses of
6  the executive and the legislature" that threaten the courts' "own institutional integrity." *United States v.*
7  *Gonsalves*, 691 F.2d 1310, 1319 (9th Cir. 1982), *cert. granted*, *judgment vacated*, 464 U.S. 806.  In
8  *Gonsalves*, the Ninth Circuit "also claimed that the supervisory power was animated by 'notions of fair
9  play which are more exacting than the minimum constitutional requirements of due process,'
10 [*Gonsalves*, 691 F.2d] at 1316, and that it allowed federal courts 'to do justice.'" *Gatto*, 763 F.2d at
11 1045 (citing *Gonsalves*, 691 F.2d at 1316).  But, the Supreme Court vacated the expansive *Gonsalves*
12 interpretation of supervisory authority in light of *United States v. Hasting*, 461 U.S. 499 (1983).  The
13 Ninth Circuit later explained what this vacatur meant.

> But the Supreme Court vacated and remanded our decision in *Gonsalves* in light of *Hasting*. This suggests that our extensive discussion was insufficiently sensitive to the power's limitations. In particular, the Supreme Court's action calls into question the expansive supervisory discretion we attempted to derive from the supposed animating force of "notions of fair play."

18 *Gatto*, 763 F.2d at 1045.  Thus, where a district court "imposes sanctions on executive conduct that is
19 otherwise permitted by the Constitution, a federal statute or a rule [it] will most likely be invading the
20 executive sphere rather than protecting itself from invasion." *Gatto*, 763 F.2d at 1046.  In *Hasting*, the
21 Supreme Court explained that through "the exercise of supervisory powers, federal courts may, within
22 limits, formulate procedural rules not specifically required by the Constitution or the Congress."
23 *Hasting*, 461 U.S. at 505.  Within that framework, supervisory authority is limited: (1) "to implement a
24 remedy for violation of recognized rights"; (2) "to preserve judicial integrity by ensuring that a
25 conviction rests on appropriate considerations validly before the jury"; and (3) "as a remedy designed to
26 deter illegal conduct." *Id.* (citations omitted).

27     Here, the sanction of dismissal imposed upon a valid indictment brought through the Executive
28 Branch based solely on "Congress's prolonged failure to provide funding for defense counsel" cannot be

justified under existing precedent as a proper exercise of supervisory authority. ECF 30, Order, at 7. For this reason, the Court should reconsider dismissal of the indictment in this case.

### CONCLUSION

Because the sole rationale for the Court's dismissal Order is now moot based upon the restoration of funding, this changed circumstance provides grounds for the Court to reconsider its previous dismissal Order. If Ortiz desires additional time to address the alleged prejudice suffered during the funding lapse, a continuance of the trial is the more-appropriate and less-drastic remedy required by existing precedent. In addition, the Court's dismissal Order should be reconsidered because the drastic remedy of dismissal based upon the inaction of the Legislative Branch is not within the supervisory authority of a district court and, even assuming it is, Oritz cannot demonstrate any meaningful prejudice, much less prejudice justifying dismissal of a valid indictment. Accordingly, the United States respectfully moves for the Court to reconsider its Order dismissing the indictment based upon changed circumstances, vacate that Order, and set a status conference to confirm existing dates or schedule new dates, as appropriate.

ERIC GRANT
United States Attorney

Dated:  December 1, 2025     By:  */s/ Jason Hitt*
JASON HITT
Assistant United States Attorney

UNITED STATES'S REPLY IN SUPPORT OF RECONSIDERATION       8